# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MELVIN CLYDE WILLIAMS,

       Plaintiff,         CIVIL ACTION NO. 09-CV-14380

vs.

                            DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12) be GRANTED and that the instant Complaint be dismissed as there was substantial evidence on the record that claimant retains the residual functional capacity for a limited range of light work.

***

**II.    PROCEDURAL HISTORY:**

Plaintiff filed applications for disability and Disability Insurance Benefits and Supplemental Security Income with a protective filing date of February 7, 2006 alleging that he had been disabled since May 1, 2002 due to carpal tunnel syndrome and pain in his hands, shoulders and back. (TR 15, 162, 165, 174, 200, 206, 210). The Social Security Administration denied benefits. (TR 153-59). Administrative Law Judge Regina Sobrino (ALJ) held a de novo hearing on July 3, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because he was not under a disability within the meaning of the Social Security Act at any time through the date of the ALJ's May 5, 2009 decision. (TR 15-

23, 383). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5-7). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was forty-nine years old at the time of the hearing. (TR 387). Plaintiff completed the eleventh grade. (TR 101, 387). Plaintiff testified that he last worked in April 2002 and had some earnings in 2004 through 2006 for helping his girlfriend with home health care, such as administering her medication and cooking for her. (TR 387). He testified that he is not able to work due to carpal tunnel syndrome and arthritis causing pain in his hand. (TR 388). He stated that he takes strong medication three times a day, including muscle relaxers, and medication for swelling, high blood pressure and high cholesterol. (TR 388). Plaintiff stated that side effects of the medications include making him sleepy, lowering his energy level and affecting his nerves. (TR 388). He takes a nap for one to two hours during the day after he takes his medication. (TR 394). Plaintiff lies down throughout the day to relieve his pain or discomfort. (TR 394).

Plaintiff testified that he can stand about fifteen minutes or walk about twenty minutes before he has to rest and he sometimes has to use a cane for alleged arthritis in his back, although he testified that it was not prescribed by a doctor. (TR 389). Plaintiff reported that he can sit for approximately forty-five minutes. (TR 389). He can lift about ten pounds and he has trouble picking up coins or holding a pencil because his hands cramp and "lock up." (TR 390). He testified that his right hand is swollen all of the time. (TR 390). He testified that he has trouble reaching up

or out due to his right shoulder injury and he sometimes has trouble bathing or dressing due to his hands "kind of locking up." (TR 390, 392). He sometimes has trouble bending at the waist, bending his knees and crouching. He has difficulty with stairs due to pain. (TR 390-91). Plaintiff's sleep is interrupted by numbness or pain. (TR 394). Plaintiff testified that his mother and children help with chores around the house and cooking. (TR 391). Plaintiff can drive and he drove to the hearing. (TR 392).

     **B.    Medical Evidence**

By way of background, in an administrative hearing decision dated July 27, 2005 an administrative law judge found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome and hypertension. (TR 43-52).

An x-ray of the lumbar spine dated March 28, 2003 revealed "mild hypertrophic degenerative changes" with hypertrophic spurs at L2 and L3, vertebral body heights and intervertebral disc space well-maintained, alignment of the lumbar vertebral segments grossly within normal limits and no evidence of spondylolysis, spondylolisthesis or acute osseous abnormality. (TR 139). In July 2003, in response to carpal tunnel syndrome complaints, Plaintiff was advised to use wrist splints, engage in exercise and was prescribed Motrin for pain. (TR 328). It was noted that the bilateral wrist splints were helping. (TR 328, 333, 339). In 2003 Plaintiff was also prescribed Naprosyn. (TR 339).

    The record shows that in 2004 Plaintiff complained of pain in the hands and shoulders and was treated at the medical clinic four times in 2004, once each in January, February, June and September, and was a "no show" for appointments on three other dates. (TR 317-27). During this time period Plaintiff was taking Vicodin.

On January 3, 2006 Plaintiff reported to the medical center with complaints of increased bilateral shoulder pain. (TR 304-15). X-rays of the right and left shoulders revealed normal bony mineralization, no focal bone lesions, fracture or dislocation and unremarkable soft tissue. (TR 309-15). At an examination on January 5, 2006 it was noted that Plaintiff reported that he had had bilateral shoulder pain for quite some time, yet pain in the right shoulder was increased after shoveling snow. (TR 304). Plaintiff had decreased range of motion in all directions in the right shoulder but no swelling or erythema. (TR 304). Plaintiff was given a steroid injection in the right shoulder and prescribed Vicodin as needed. (TR 304). Plaintiff reported relief for two to three weeks after the injection. (TR 240, 303).

Plaintiff was referred to physical therapy for his shoulders from March through April 2006. On April 5, 2006 Plaintiff reported pain at an 8 on a scale of 10. (TR 274, 280). On April 19, 2006, after only the initial evaluation and one treatment session, Plaintiff was discharged due to his failure to attend and keep scheduled appointments. (TR 268–73, 298).

On April 6, 2006 Plaintiff was examined at a primary care clinic by Anna J. Harper, RN, MSN, APRN-BC. (TR 239-43). The report notes Plaintiff's complaint of blood in his stool, occurring primarily after strenuous activity and ongoing since 2002, dull, aching, throbbing pain in his lower back occurring during the past three to four years, and reported pain from sitting for a long time, walking for a length of time or carrying anything over thirty pounds. (TR 240). Plaintiff reported treating for bilateral shoulder pain and having started physical therapy, but with increased pain after the second session. (TR 240). Plaintiff reported taking Naproxen for pain and reported his shoulder pain at a 7 on a scale of ten. (TR 240). He reported his back pain at a 5 on a scale of ten, after he takes Naproxen. (TR 240). Ms. Harper noted Plaintiff's report that he was diagnosed with bilateral carpal tunnel syndrome two years prior, that he wears splints at night and that the

4

symptoms recently increased, where he now has difficulty opening jars without a great deal of pain and difficulty holding onto objects. (TR 240).

The nurse noted that Plaintiff denied fatigue and reported that he sleeps well through the night. (TR 241). Plaintiff's medication list at the time was reported to be hydrochlorothiazide, aspirin, naproxen, Vicodin ES, Flexeril and Celebrex. (TR 241). The nurse noted that on the labs drawn that day the drug screen was positive for cocaine and marijuana. (TR 241). She reported that Plaintiff's reflexes in the upper and lower extremities were intact, muscle strength in the upper and lower extremities was equal, gait was steady and smooth, straight leg test was positive at thirty degrees bilaterally, he was unable to draw his arms up without a great deal of difficulty and range of motion was painful. (TR 242). Plaintiff was advised to discontinue Naproxen and Celebrex due to lower GI bleeding, it was noted that he was on Vicodin for the past two years, and he was advised to continue to wear his wrist splints at night. (TR 242).

An April 6, 2006 x-ray of the lumbosacral spine showed hypertrophic spurring along the body margin at L2 and L3, alignment and disc spaces were well-maintained and arthritic changes were seen by the left sacroiliac joint. The study was summarized as "essentially negative" with "possible left sacroiliitis." (TR 221). April 7, 2006 x-rays of the shoulders were negative for the left shoulder and revealed osteoarthritis of the right AC joint with possible partial separation. (TR 222). A June 15, 2006 echocardiogram was normal and showed a left ventricle of normal size, "hyperdynamic left ventricle with mild concentric hypertrophy," ejection fraction of 70% and normal valves. (TR 216-20, 238). At a July 7, 2006 follow-up examination Plaintiff complained of ongoing right shoulder pain and bilateral wrist pain, and reportedly also had neck and lower back pain and left shoulder pain. (TR 267). Plaintiff's right shoulder was tender on palpation with decreased range of motion but without redness or effusion. (TR 267). Plaintiff had decreased range

of motion in the left shoulder joint on abduction. (TR 267). The impression was osteoarthritis, carpal tunnel syndrome for which he was going to be referred for an EMG, and hyperlipidemia. (TR 267). A July 7, 2006 x-ray of the left shoulder was normal and the right shoulder revealed degenerative changes within the right acromioclavicular joint with osseous structure intact and without evidence of acute fracture or dislocation. (TR 259-62).

On July 10, 2006 Plaintiff reported to the hospital having had a fall the previous day and striking his right wrist. (TR 214-15). X-rays of the right hand were negative for fracture or dislocation. (TR 214-15). He was assessed with a wrist strain and sent to occupational therapy for a splint. (TR 227-36). Other medical records are discussed in the analysis below.

### C. Vocational Expert

The Vocational Expert (VE) agreed that Plaintiff has performed past full-time work within the last fifteen years that includes cleaner, production line worker, material handler and laborer. (TR 396). The ALJ asked the VE to consider an individual with an eleventh grade education who cannot lift, carry, push or pull more than 10 pounds frequently and twenty pounds occasionally, can stand and/or walk approximately six hours and sit up to eight hours of an eight-hour work day, should not need to climb ladders, can only occasionally climb stairs, stoop and crouch and should not work in direct sunlight. (TR 396). The hypothetical individual is further limited to frequent handling and fingering, should not need to reach above chest level, should have no exposure to hazards or vibration, should not drive as a work duty and is limited to simple, routine work. (TR 397).

The VE testified that such an individual could not perform Plaintiff's past work but that there are other jobs in the economy which he could perform. (TR 397). The VE testified that the jobs included are classified as light exertion, located in the lower peninsula of Michigan and are a reduced range of inspector jobs (reduced to 3,500), a reduced range of office clerk jobs (reduced to

2,500), a reduced range of reception and information clerk jobs (reduced to 2,000) and a reduced range of food preparation jobs (reduced to 2,100). (TR 397). The VE testified that there are sedentary jobs available including visual inspector jobs (2,000), surveillance system monitor jobs (1,500), office clerk jobs (reduced to 1,800), and reception and information clerk jobs (reduced to 2,800). The VE further testified that all of the jobs, light and sedentary, would permit the individual to use a cane to walk. (TR 397). The VE testified that the jobs would allow one unexcused absence per month. (TR 398). The VE testified that the need to nap and/or lie down outside of the designated break and lunch periods would preclude work. (TR 399). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 399).

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through September 30, 2008, had not engaged in substantial gainful activity since July 28, 2005, the first day of his unadjudicated period, and suffers from degenerative joint disease and carpal tunnel syndrome, severe impairments, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 17-18). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. (TR 18). The ALJ found that Plaintiff is not able to perform his past relevant work, but he is able to perform a significant number of jobs in the economy and therefore he is not suffering from a disability under the Social Security Act. (TR 21-22).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in failing to consider worsening evaluations related to Plaintiff's lumbar spine and bilateral upper extremities as shown in an April 2006 consultative evaluation.

**C.     Analysis**: **Whether The ALJ Properly Considered The April 2006 Consultative Evaluation**

Plaintiff argues that there was a July 2005 decision finding that Plaintiff was not disabled at any time through July 27, 2005. (TR 46-52). The decision was not appealed and it is administratively final. The ALJ correctly points out that "[w]here a final decision of SSA after a hearing on a prior disability claim contains a finding of a claimant's [RFC], the [ALJ] may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed

circumstances provide a basis for a different finding of the claimant's [RFC]." SSR 98-4(6), *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) (TR 18).

Plaintiff points out that the ALJ found a less restrictive RFC related to Plaintiff's ability to reach and/or grasp and finger and handle than was given in the July 2005 RFC. The ALJ concluded Plaintiff could frequently, but not constantly, handle and finger. (TR 18). Plaintiff also points out where the ALJ relied on two different medical examinations to make such findings. Plaintiff underwent an orthopaedic evaluation on January 8, 2005 in which Dr. Drouillard reported normal findings with respect to Plaintiff's hands and wrists and on April 4, 2006 a consultative examiner noted that Plaintiff was able to pick up coins with both hands, light touch and vibration senses were intact and Tinel's sign was negative bilaterally. (TR 20, 360, 367). Plaintiff in his brief does not expressly challenge these findings by the ALJ and the Court notes that substantial evidence supports the ALJ's less restrictive finding regarding Plaintiff's reaching, grasping, handling and fingering limitations. The ALJ also included a limitation to no overhead reaching, discussed below.

Plaintiff mentions all of this to preface his issue that the ALJ did "not discuss or evaluate the worsening examinations that would impact Mr. Williams' ability to exertionally perform light work." (Docket no. 11). Specifically, Plaintiff compares a March 2003 consultative examination with a January 2005 examination and an April 2006 examination. (Docket no. 11 p. 9). Plaintiff argues that the three examinations show "worsening problems in the lumbar spine and bilateral upper extremities" as evidence by the April 2006 examination. (Docket no. 11 p. 10).

On March 28, 2003 Plaintiff underwent a physical examination with consultant Richard J. Kovan, M.D. (TR 140-45). Dr. Kovan noted Plaintiff had a history of lower back pain and bilateral wrist and hand pain. (TR 141). On examination Dr. Kovan reported a normal gait, ability to toe walk and heel walk, squat and return to a standing position, and full lumbosacral spine flexibility

with full cervical range of motion. (TR 141). Plaintiff had full active range of motion in both upper extremities including shoulders, wrists and hands. (TR 141). The doctor noted that Plaintiff reported diminished sensation to pinprick of the index finger. (TR 141). "Muscle stretch reflexes [were] diminished but symmetrical throughout both upper and lower extremities" and straight leg raising maneuvers were negative in both the seated and supine positions. (TR 141). The doctor concluded that Plaintiff had "diminished sensation to pinprick in the median nerve distribution of both hands, which could be consistent with carpal tunnel syndrome and he found no other neurological impairment, "especially with the lumbar spine." (TR 141).

As Plaintiff points out, Paul J. Drouillard, D.O., orthopaedic surgeon, examined Plaintiff, allegedly in relation to a workers' compensation claim, and reported that Plaintiff had full range of motion in both shoulders, no weakness of the rotator cuff, and no evidence of instability. (TR 367). The doctor also reported full range of motion in the hands and wrists and negative Tinel's sign, Phalen's test and Finkelstein test. (TR 367). The doctor reported that it was his impression that Plaintiff gave "less than his full effort" on the grip strength testing. (TR 367). The doctor noted that Plaintiff had brought his wrist braces with him and that Plaintiff reported that "he has been using these same braces every day for the last two years." (TR 366). The doctor reported that "they appear to be brand new and show no evidence of usage." (TR 366). On examination the doctor described Plaintiff as ambulating "under his own power without the use of a walking aid," wearing bilateral wrist braces and being "extremely muscular." (TR 367).

On April 4, 2006 Plaintiff underwent a consultative examination with S.L. Schuchter, M.D., FACP. (Docket no. 360). In his report dated April 12, 2006 Dr. Schuchter reported that Plaintiff was "well developed and well muscled." (TR 360). The doctor reported that there was "no incoordination" in the nervous system and light touch and vibration senses were intact. (TR 360).

The doctor reported no joint swelling, redness or paraspinal muscle spasm and Tinel's sign was negative bilaterally. (TR 360). Plaintiff's grip was 26 kg on the right and 20 kg on the left and he was "able to pick up coins with both hands." (TR 360). The doctor concluded that Plaintiff has low back pain, bilateral shoulder pain, bilateral elbow pain and possible carpal tunnel syndrome. (TR 360). Dr. Schuchter's examination showed a decreased range of motion in the lumbar spine, with flexion at 0-50 degrees, extension at 0-10 degrees, and right and left lateral flexion at 0-15 degrees. (TR 363).

The ALJ's decision shows that she considered the April 2006 examination along with the other evidence of record. (TR 18, 19). The ALJ noted that at the consultative examination on April 4, 2006, Plaintiff exhibited decreased range of motion of the wrists, elbows, lumbar spine, shoulders and knees. (TR 19). In the same April 2006 examination, Dr. Schuchter observed that Plaintiff was able to sit, stand, bend, push, pull, dress and undress, open a door, make a fist, pick up a coin, get on and off the examining table, touch finger to finger, finger to nose and heel to shin, and was limited only in stooping (1/4 of the way) and squatting and arising from a squat (1/4 of the way). (TR 361). Of the areas of limitation set forth by Dr. Schuchter, stooping and squatting, the ALJ's RFC similarly limits Plaintiff to occasional stair climbing, stooping and crouching. (TR 18).

The ALJ properly considered Plaintiff's upper extremity impairments and limitations. In his discussion of Plaintiff's pain complaints, the ALJ pointed out that in January 2006 Plaintiff reported increased bilateral shoulder pain after shoveling snow and received a shoulder injection, which helped for a while before the pain reportedly returned. (TR 19). The ALJ incorporated Plaintiff's reported shoulder impairment and pain by including in the RFC a limitation that precludes reaching

12

above chest level[1]. (TR 18). Plaintiff has not shown what, if any, limitations resulting from a reduced range of motion of the lumbar spine and/or shoulders were not taken into account by the ALJ's RFC.

The ALJ's RFC is more restrictive than the medical consultant's April 27, 2006 Physical Residual Functional Capacity Assessment findings. The Consultant concluded that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours of an eight-hour work day, sit about six hours of an eight-hour work day, and is unlimited in pushing and/or pulling except as set forth with respect to lifting and carrying. (TR 350). The consultant referenced the consultative examination of April 2006 including Plaintiff's decreased range of motion in the lumbar spine, knees, shoulders and wrists. (TR 351). The consultant found no postural or manipulative limitations but concluded that Plaintiff should avoid concentrated exposure to noise. (TR 351-52). The ALJ's RFC is supported by substantial evidence.

Plaintiff argues that because the ALJ failed to properly evaluate the medical records related to the alleged worsening condition of the lumbar spine and shoulders, she necessarily formed an

---

[1] Plaintiff has not challenged the ALJ's credibility. However, it is worthwhile to note that the ALJ discussed her evaluation of Plaintiff's allegations of pain and credibility. In addition to objective medical evidence, the ALJ considered all the evidence of record in making her credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(2), (3); 416.929(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p. The ALJ considered objective evidence, including tests and examinations that showed mild carpal tunnel syndrome, predominately normal findings and some limitations in range of motion, The ALJ also discussed Plaintiff's daily activities including providing some home health care for a friend, shopping with assistance and driving. (TR 21). The ALJ discussed Plaintiff's conservative treatment and therapies, including physical therapy from which Plaintiff was discharged for failure to attend, and the medication he takes. The ALJ discussed Plaintiff's report that his medications make him sleepy and noted that treatment records do not refer to this side effect or contain complaints of Plaintiff's need to sleep. (TR 21). Plaintiff reported no fatigue in an examination in April 2006. (TR 241). The ALJ's credibility determination and evaluation of Plaintiff's reports of pain and fatigue are supported by substantial evidence.

inaccurate hypothetical question to the VE. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which she finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *See Webb v. Comm'r,* 368 F.3d 629, 633 (6th Cir. 2004). The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations. The ALJ's decision that Plaintiff retained the RFC for a restricted range of work is supported by substantial evidence and the ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs in the economy which Plaintiff can perform.

## VI. CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 11) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not

preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 12, 2010      s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

### **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 12, 2010      s/ Lisa C. Bartlett
                                            Case Manager